

**FILED**
**Mar 01, 2024**
**06:50 AM(CT)**
**TENNESSEE**
**WORKERS' COMPENSATION**
**APPEALS BOARD**

**TENNESSEE BUREAU OF WORKERS' COMPENSATION**
**WORKERS' COMPENSATION APPEALS BOARD**

| | | |
|---|---|---|
| Destiny Dyer | ) | Docket No. 2023-05-0917 |
| | ) | |
| v. | ) | State File No. 50156-2022 |
| | ) | |
| PetSmart, Inc., et al. | ) | |
| | ) | |
| | ) | |
| Appeal from the Court of Workers' | ) | |
| Compensation Claims | ) | |
| Thomas L. Wyatt, Judge | ) | |

---

### Affirmed and Remanded

---

In this interlocutory appeal, the employer contests an order awarding medical benefits. The employee reported an injury to her shoulder and arm while grooming a dog, and the employer initially provided benefits. Several months later, at her first visit with an authorized pain management physician, the employee described having hit her head during the incident, and the physician referred her to a neurosurgeon for evaluation of symptoms in her cervical spine. After the neurosurgeon recommended surgery, the employer denied the procedure based on defective notice. Following an expedited hearing, the trial court ordered the employer to provide surgery as recommended by the employee's neurosurgeon. The employer has appealed. After careful consideration, we affirm the trial court's award of medical benefits and remand the case.

Judge Meredith B. Weaver delivered the opinion of the Appeals Board in which Presiding Judge Timothy W. Conner and Judge Pele I. Godkin joined.

A. Allen Grant and Benjamin T. Norris, Nashville, Tennessee, for the employer-appellant, PetSmart, Inc.

Cindy (Harris) Harlow, Nashville, Tennessee, for the employee-appellee, Destiny Dyer

### Factual and Procedural Background

Destiny Dyer ("Employee") was working as a dog groomer for PetSmart, Inc. ("Employer"), on June 25, 2022 when she reported suffering an injury. She was trimming the nails of a French Mastiff when the dog pushed his left paw forward, pulling her left arm and causing her to twist and be pulled backwards. Employee informed her supervisor

1

of the incident but declined medical treatment on that date. After two weeks, Employee had not improved and requested medical treatment. Employer documented the injury as "employee was clipping nails when a large dog kicked its leg and employee heard a pop in her shoulder." Employee also spoke to a registered nurse with Employer's insurance carrier and described left shoulder pain after a dog "yanked" her shoulder. Employer authorized Employee to visit an urgent care clinic, where she was diagnosed with a "strain of unspecified muscle, fascia[,] and tendon at shoulder and upper arm level." On a later visit to urgent care on August 11, 2022, Employee described "constant pain of the neck." During her last visit to urgent care, she reported left shoulder numbness and tingling. At that point, she was referred to an orthopedist.

Employer provided a panel of orthopedic physicians, and Employee selected Dr. Roderick Vaughan. At her initial appointment on September 12, 2022, she reported left-sided radiating pain from her shoulder to her forearm and tingling in her fingers after a work injury in which a French Mastiff pulled her left arm backward. Dr. Vaughan ordered an MRI of the left shoulder and nerve testing, both of which were normal. He referred Employee to a pain management specialist, and Employer provided a panel, from which Employee selected Dr. Jeffrey Hazlewood.

During her initial appointment with Dr. Hazlewood on October 24, 2022, Employee reported that when the dog pulled her arm, she "smacked" her head on a metal bar over the grooming table, which Dr. Hazlewood noted "may have caused a whiplash type" injury. This is the first medical documentation indicating that Employee hit her head at the time of the accident. At that time, Dr. Hazlewood ordered an MRI of the cervical spine and another nerve test of the left arm. The MRI revealed a large left-sided disc herniation at C6-7, and the nerve testing indicated radiculopathy extending from the C7 level. Dr. Hazlewood opined Employee's condition was work related and referred her to Dr. George Lien, a neurosurgeon. Employer approved the referral and, following an evaluation, Dr. Lien recommended surgery.

Thereafter, Employer began to question the claim based on the new information in the medical records regarding Employee's description of the accident, in particular Employee's report that she struck her head. After reviewing the prior medical records at Employer's request, Dr. Hazlewood noted there was no mention that Employee hit her head at the time of the accident. He completed a questionnaire on May 30, 2023 regarding causation of the neck injury and revised his opinion, noting that if there was no impact to Employee's head, the incident with the French Mastiff would not, in his opinion, be the primary cause of the disc herniation and the need for surgery. Based on this response, Employer denied the surgery, and Employee filed a petition for benefit determination.

The parties deposed both Dr. Lien and Dr. Hazlewood in preparation for the expedited hearing. Dr. Lien, a board-certified neurosurgeon, testified that, based on his evaluation of Employee and her MRI and EMG results, he recommended an anterior

2

cervical discectomy at C6-7. Dr. Lien concluded that the disc herniation and Employee's need for surgery were more than fifty percent caused by the work incident, considering all causes. Employer's counsel presented Dr. Lien with all the prior medical records, including questionnaires, and questioned him regarding Employee's initial reports of a shoulder injury and her later report to Dr. Hazlewood of having hit her head. Dr. Lien stated, "[C]ertainly it's a relevant part of the history, but as far as . . . the importance of whether she may have suffered that sort of an injury or not, it's not as relevant." He went on to say that "just the jerking of the arm with the sudden movement is enough of a mechanism to create a cervical disc herniation," and he concluded it was more likely than not that the reported injury was the cause of the disc herniation.

During his deposition, Dr. Hazlewood, who is board-certified in physical medicine, rehabilitation, and pain management, reiterated his opinion that without the impact to the head Employee related to him at her initial visit, he did not believe the mechanism of injury was the primary cause of the cervical herniation. Dr. Hazlewood stated, "[i]n my mind, pulling an arm and hyperextending the shoulder does not have any significant force on the cervical spine . . . . I think it's going to have to be some kind of significant force applied to the spine to cause the disc herniation, not the yanking of an arm where the force is applied to the shoulder." He further noted that Dr. Vaughan, who is an orthopedic physician specializing in the shoulder and neck, apparently did not believe Employee had suffered a neck injury at the time he evaluated her. Finally, Dr. Hazlewood noted that Employee presented with normal strength and had a normal EMG with Dr. Vaughan but had left extremity weakness and radiculopathy by the time she had her initial appointment with him, which he believed to be unusual. He testified he did not understand how weakness would not be present until over three months after the accident and that in "[his] mind, four weeks [after] would be the limit" for the weakness to begin. The implication of such testimony, according to Employer, is that the work incident as originally described by Employee was not the cause of the cervical disc herniation, but that some later unknown event must have been the cause.

On cross examination, Dr. Hazlewood admitted an individual does not have to hit her head to have a whiplash injury. He further stated the initial EMG performed at Dr. Vaughan's request was not as thorough as his EMG and was "a basic screen . . . . [the physician] did not check the number of muscles typically one should check to have the high sensitivity of detecting a radiculopathy."

Employee, her supervisor, and the insurance adjuster handling Employee's claim testified live at the expedited hearing.[1] Employee testified that she was cutting a French Mastiff's nails when she was injured. The dog was on the grooming table and secured to the metal grooming bar above the table. She and the dog were facing opposite directions while she cupped his front paw with her left hand to trim his nails when the dog moved his

---

[1] The adjuster testified by videoconference pursuant to Employer's unopposed motion.

3

paw forward suddenly, pulling her arm backward. She began to stand up straight, as she had been bent over the dog, and hit her head just above her right eyebrow, on the metal bar over the grooming table. She then moved her arm forward and grabbed the other part of the bar to keep from falling. She testified she told her supervisor about hitting her head afterwards and that she told all the providers about hitting her head, but she believed that Dr. Hazlewood was the first provider "to actually fully sit down and listen and not rush through the motions. [He] actually listened to every little bit I could tell him, every little symptom, every little thing to try and figure it out." She testified to daily pain since the accident, as well as trouble sleeping, and a need to modify her daily activities. She was working for Employer at the time of the hearing as an online sales cashier, as she could not perform the duties of a groomer.

Employee's supervisor, Bradley Desselle, testified that he could not recall if Employee reported the incident directly to him that day or to someone else. He could not recall if he saw any bruising on Employee. He identified the report he made with Employer, which did not include any description of Employee's hitting her head or any "whiplash" type injury. He testified that if Employee had reported hitting her head to him, he would have written it down on the form. Although there were video cameras at the scene of the accident, Mr. Desselle testified he did not pull the footage as the cameras were typically used if a pet owner made a claim, not due to an associate's work accident. As to Employee's character, Mr. Desselle testified she had a good work ethic, was honest, and that he had never written her up since she began working for Employer over three years prior.

The insurance adjuster assigned to the claim, Amoz Leeb, testified regarding claims procedures. He explained that the carrier received the claim on July 11, 2022, but he was not assigned to the claim until September 2, 2022, when Employee was given modified duty restrictions. He testified he interviewed Employee at that time, and she related a left shoulder injury only. She did not indicate she had hit her head at the time of the accident, which he noted was consistent with Employer's initial report and the report completed by the registered nurse. He testified that if Employee had reported hitting her head, he would have requested video footage from Employer. Once she reported she had hit her head to Dr. Hazlewood, it was too late to obtain that footage as Employer only retains such video footage for up to four months.

Employer argued during the expedited hearing that Employee's initial notice of her alleged work accident was defective because she did not include the fact that she hit her head in the initial report. It asserted that Mr. Leeb's testimony that he was unable to obtain the video footage due to the late notice of the alleged head injury was sufficient evidence that Employer had been prejudiced by the defective notice. Finally, Employer argued Employee lacked credibility, pointing to what it deemed to be inconsistencies in medical records regarding how the injury occurred, a purported inconsistency in her deposition testimony and her testimony at the hearing, and Employee's mental health history.

For her part, Employee contended she met her burden of proof with Dr. Lien's testimony regarding the primary cause of her cervical disc herniation. The trial court determined that Employee would likely prevail at trial regarding proper notice of the injury and determined that her testimony that she told her supervisor she had hit her head on the date of the incident was credible. The court further found Dr. Lien's testimony rebutted the presumption of correctness regarding causation afforded to Dr. Hazlewood's opinion. The court ordered Employer to provide the medical benefits sought by Employee. Employer has appealed.

## Standard of Review

The standard we apply in reviewing a trial court's decision presumes that the court's factual findings are correct unless the preponderance of the evidence is otherwise. *See* Tenn. Code Ann. § 50-6-239(c)(7) (2023). When the trial judge has had the opportunity to observe a witness's demeanor and to hear in-court testimony, we give considerable deference to factual findings made by the trial court. *Madden v. Holland Grp. of Tenn., Inc.*, 277 S.W.3d 896, 898 (Tenn. 2009). However, "[n]o similar deference need be afforded the trial court's findings based upon documentary evidence." *Goodman v. Schwarz Paper Co.*, No. W2016-02594-SC-R3-WC, 2018 Tenn. LEXIS 8, at *6 (Tenn. Workers' Comp. Panel Jan. 18, 2018). Similarly, the interpretation and application of statutes and regulations are questions of law that are reviewed *de novo* with no presumption of correctness afforded the trial court's conclusions. *See Mansell v. Bridgestone Firestone N. Am. Tire, LLC*, 417 S.W.3d 393, 399 (Tenn. 2013). We are also mindful of our obligation to construe the workers' compensation statutes "fairly, impartially, and in accordance with basic principles of statutory construction" and in a way that does not favor either the employee or the employer. Tenn. Code Ann. § 50-6-116 (2023).

## Analysis

Employer has raised four issues on appeal: (1) whether the trial court considered the record as a whole in making its factual findings; (2) whether the evidence supports a finding that employee's cervical spine injury was an "injury by accident"; (3) whether the trial court abused its discretion in deciding Dr. Lien's testimony rebutted the presumption of correctness afforded Dr. Hazlewood's opinion regarding causation; and, (4) whether Employee's notice of injury was defective, thereby resulting in prejudice to Employer. The first and second issues hinge on Employer's contention that Employee is not credible, while the third issue relates to the medical proof. Finally, Employer seeks a remand for the court to address the extent to which Employer was prejudiced based on its contention that Employee's written notice was defective. *See Ernstes v. Printpack Inc.*, No. 2020-06-0617, 2023 TN Wrk. Comp. App. Bd. LEXIS 25 (Tenn. Workers' Comp. App. Bd. June 6, 2023), *aff'd Ernstes v. Printpack*, No. W2023-00863-SC-R3-WC, 2024 Tenn. LEXIS 6 (Tenn. Workers' Comp. Panel Jan. 2, 2024).

5

*Employee's Credibility*

In its brief, Employer submits that the trial court relied on its credibility determinations regarding Employee's testimony to find that Employee hit her head on the metal bar over the grooming table and told her supervisor that same day. Employer argues the trial court did not adequately consider Mr. Desselle's testimony that he would have included the blow to the head in his report if Employee had told him about it or Mr. Leeb's testimony regarding the procedure he would have followed had Employee reported a blow to the head. Employer also points out that the medical records make no mention of any impact to Employee's head prior to her first visit with Dr. Hazlewood and that Employee's testimony contains significant contradictions that call her credibility into question. In Employer's view, due to these deficiencies in her case, Employee has not come forward with sufficient evidence of "a specific incident, or set of incidents, . . . identifiable by time and place of occurrence" to indicate a likelihood of prevailing at trial on this threshold issue. Tenn. Code Ann § 50-6-102(12)(A) (2023).

The law is clear that "[w]hen the trial court has heard in-court testimony, considerable deference must be afforded in reviewing the trial court's findings of credibility and assessment of the weight to be given to that testimony." *Tryon v. Saturn Corp.*, 254 S.W.3d 321, 327 (Tenn. 2008). Employer is correct that none of the medical records prior to Employee's visit to Dr. Hazlewood identified any type of blow to the head. However, Employee is not claiming a head injury causing the need for medical treatment; she is claiming an incident at work that resulted in shoulder and neck symptoms, subsequently diagnosed as a cervical disc herniation. Furthermore, the August 11, 2022 medical record from urgent care, prior to any referral to a specialist, does reflect that Employee reported a sharp pain in her *neck*.[2] While Mr. Desselle testified that he would have noted a blow to the head in the injury report he completed, he did not recall whether Employee even reported the incident to him on the day it occurred. As such, his testimony regarding the details of the notice Employee provided to him is equivocal at best. Further, he testified that he believed Employee to be honest.

In contrast to Mr. Desselle, Employee provided clear and unequivocal testimony regarding the series of events that occurred while she was trimming the nails of a French Mastiff on June 25, 2022, causing her to suffer symptoms in her shoulder and neck. She marked multiple pictures for the court to illustrate how the incident occurred and the position of both the dog's body and her own throughout the incident. Thus, the evidence does not preponderate against the court's finding that Employee was credible regarding her description of the accident and resulting symptoms, and we conclude the preponderance of the evidence supports a finding that Employee reported an accident "identifiable by time and place of occurrence."

---

[2] Employee's responses to Employer's Requests for Admissions indicate her first report of neck pain was to Dr. Hazlewood, but the urgent care clinic record clearly states she reported neck pain.

Employer next argues that the trial court abused its discretion in determining the testimony of Dr. Lien rebutted the presumption that Dr. Hazlewood's causation opinion was correct. Of the two physicians, only Dr. Hazlewood was selected from a panel; therefore, his causation opinion is entitled to a presumption of correctness under Tennessee Code Annotated section 50-6-102(12)(E). This presumption can be rebutted by a preponderance of the evidence. *Id.* When weighing conflicting medical evidence, the judge has discretion to determine which opinion to accept and can consider, among other things, the qualifications of the experts, circumstances of their examinations, information available to each expert, and an evaluation of the importance attached to the information by other experts. *Bass v. The Home Depot U.S.A., Inc.*, No. 2016-06-1038, 2017 TN Wrk. Comp. App. Bd. LEXIS 36, at *9 (Tenn. Workers' Comp. App. Bd. May 26, 2017).

Here, the court determined that the qualifications of the experts were comparable and that they had spent a similar amount of time with Employee.[3] The court noted that Dr. Lien gave two reasons in support of his opinion: 1) the trauma of the dog suddenly pulling Employee's arm was sufficient to cause a cervical disc herniation even if she did not strike her head; and 2) she reported symptoms of and sought treatment for a cervical injury shortly after she reported being injured. On the other hand, the court did not find Dr. Hazlewood's opinion persuasive. Initially, Dr. Hazlewood opined the cervical injury was primarily related to the incident at work, but he then changed his opinion based on a lack of documentation in the prior medical records that Employee had hit her head at the time of the incident. The trial court considered Dr. Hazlewood's decision to base his causation opinion on a presumption that Employee had *not* hit her head as she described to him to be speculative.[4] Furthermore, the court observed that Employee had no apparent reason to lie regarding hitting her head because, at the time she first saw Dr. Hazlewood, her claim had been accepted as compensable and there was no evidence she knew she had a herniated disc.

---

[3] In its brief, Employer asserts the trial court incorrectly assessed the relative qualifications of the physicians given Dr. Hazlewood's experience in assessing and instructing others regarding the assessment of medical causation. With this argument, Employer did not acknowledge Dr. Lien's experience assessing and treating cervical spine disc herniations, including his evaluation of physiological causes of disc herniations as part of his role as a treating neurosurgeon. We find no error in the trial court's assessment of the relative expertise of each physician.

[4] In its brief, Employer also contends the trial court inappropriately considered Dr. Hazlewood's testimony regarding any mental diagnosis of Employee and its impact, if any, on his causation opinion. Yet, during Dr. Hazlewood's deposition, it was counsel for Employer who asked about Employee's mental diagnosis, and it was counsel for Employer who implied that such a diagnosis could have prompted Employee to lie about hitting her head. Dr. Hazlewood agreed "it is a possible symptom of [the employee's mental condition] to lie," but, as noted by the trial court, he did not offer any testimony or other evidence suggesting Employee had been dishonest with him. Employer's own lay witness described her as "honest." We find no error in the trial court's consideration of this testimony.

Previously, we have stated:

> a reviewing court can review documentary evidence, including expert depositions, *de novo* in order to determine where the preponderance of the evidence lies. However, with respect to the trial court's ultimate determination, a reviewing court should acknowledge the trial court's discretion to evaluate which expert's opinion is entitled to greater weight based on the totality of the evidence presented to the court and is to review such a determination under an abuse of discretion standard.

*Johnson v. Inspire Brands d/b/a Blazin Wings, Inc.*, No. 2020-08-0731, 2022 TN Wrk. Comp. App. Bd. LEXIS 35, at *18 (Tenn. Workers' Comp. App. Bd. Sept. 7, 2022). "A trial court abuses its discretion when it causes an injustice by applying an incorrect legal standard, reaching an illogical decision, or by resolving the case on a clearly erroneous assessment of the evidence." *Henderson v. SAIA, Inc.*, 318 S.W.3d 328, 335 (Tenn. 2010) (internal citation and quotation marks omitted).

In our consideration of the deposition testimony, we note that Dr. Hazlewood specifically testified: "[S]he told me that she hit her head hard on a bar and whiplashed her neck." He went on to state, "I think it's going to have to be some significant force applied to the spine to cause the disc herniation, not yanking of an arm where the force is applied to the shoulder." However, in his initial evaluation of Employee there is no notation of the significance of the impact on Employee's head; the record simply states: "[Employee's] head smacked into a bar, and she *may* have a had a whiplash type of event to her neck. At any rate, she had *acute pain in the left shoulder* and soon thereafter pain down the left upper extremity with parasthesias." (Emphasis added.) The remainder of Dr. Hazlewood's initial medical evaluation hinges on the injury being a hyperextension injury resulting in shoulder pain. In short, there is no indication in the record of his initial evaluation that the precise mechanism of injury was of any significance in his decision to request a cervical MRI and new nerve testing, which revealed the cervical disc herniation.

In reviewing the medical records and the testimony of both physicians, we conclude the trial court did not abuse its discretion in assigning greater weight to Dr. Lien's opinion and in determining Employee had rebutted the presumption of correctness afforded to Dr. Hazlewood's causation opinion.

*Notice*

Finally, Employer contends Employee's failure to report hitting her head at the time of the accident renders her notice defective as described in Tennessee Code Annotated section 50-6-201(a)(3), thus requiring the court to determine whether it had been prejudiced and if so, the extent of that prejudice. In doing so, Employer relies on our opinion in *Ernstes v. Printpack*, No. 2020-07-0617, 2023 TN Wrk. Comp. App. Bd. LEXI 25 (Tenn.

Workers' Comp. App. Bd. June 6, 2023), a case in which we set forth the following procedure to be used in evaluating notice:

A. Did the employee provide timely written notice of the alleged work-related injury?

B. If no timely written notice was provided, did the employer have "actual knowledge" of the alleged work-related accident or injury?

C. If no timely written notice was provided and no actual knowledge has been proven, did the employee show a "reasonable excuse" for the failure to give proper notice to the employer? In considering whether the employee has shown by a preponderance of the evidence a reasonable excuse, a court can consider, among other things: (1) the employer's actual knowledge of the employee's injury, (2) lack of prejudice to the employer by an excusal of the notice requirement, and (3) the excuse or inability of the employee to timely notify the employer. However, as previously stated by the Tennessee Supreme Court, lack of prejudice alone would not be sufficient to excuse notice.

D. If the court determines that: (1) no timely written notice was provided; (2) the employer did not have actual knowledge of the alleged accident or injury; and (3) the employee did not prove a reasonable excuse for the failure to give timely notice, the claim should be denied and dismissed.

E. If written notice was provided, but the employer affirmatively asserts there was a defect or inaccuracy in the notice, the burden of proof shifts to the employer to prove actual prejudice it suffered as a result of the defective or inaccurate notice and, if such prejudice is found, the trial court can fashion a remedy, if appropriate, "only to the extent of the prejudice."

*Id.* at *34-35 (internal citations and quotation marks omitted).[5]

One fallacy in Employer's argument concerns the distinction between notice of a work accident and awareness of the nature and extent of any medical conditions resulting from that accident. In Tennessee Code Annotated section 50-6-201(a), both "injury" and "accident" are used in describing an employee's notice requirements. However, that section specifically requires an employee to provide written notice within fifteen days

---

[5] Our opinion in *Ernstes* was subsequently affirmed by the Tennessee Supreme Court's Special Workers' Compensation Appeals Panel in *Ernstes v. Printpack, Inc.*, No. W2023-00863-R3-WC, 2024 Tenn. LEXIS 1 (Tenn. Workers' Comp. Panel Jan. 2, 2024).

9

"after the occurrence of *the accident*" unless there is evidence the employer had "actual knowledge of *the accident*." Tenn. Code Ann. § 50-6-201(a) (emphasis added). Tennessee courts have consistently held that an employee is required to give timely notice of the accident but need not understand or appreciate the nature or extent of the injuries arising from that accident at the time notice is given. *See, e.g.*, *Matlock v. Ltv Steel, Inc.*, No. W2001-02512-SC-WCM-CV, 2002 Tenn. LEXIS 559 (Tenn. Workers' Comp. Panel Dec. 4, 2002) ("[W]e know of no requirement that an employee give notice of each and every injury he received in an on-the-job accident."). Here, it is undisputed that Employee gave timely notice of the accident. Whether she included every pertinent detail of the event in her report to Employer is a question for the trial court to consider in assessing the totality of the evidence presented to date.[6]

The trial court found Employee's testimony as to how the accident occurred, including hitting her head, to be credible, and, therefore, it did not deem it necessary to further consider the notice defense raised by Employer. Given Dr. Lien's testimony that Employee's cervical disc herniation arose primarily from the work accident, regardless of whether Employee hit her head in the accident, and the trial court's determination that Dr. Lien's opinion was entitled to greater weight than that of Dr. Hazlewood, we conclude the trial court did not err in declining to further analyze the notice issue to determine whether and to what extent Employer was allegedly prejudiced by any defect in the notice.

**Conclusion**

For the foregoing reasons, we affirm the trial court's order in all respects and remand the case. Costs on appeal are taxed to Employer.

---

[6] Furthermore, we would note that the written report identified by Employee's supervisor at the hearing does not have Employee's signature or any indication she reviewed the report prior to its submission. She was not asked at the hearing if she had reviewed the written report at the time Mr. Desselle prepared it, nor did Mr. Desselle testify that Employee had reviewed it. Finally, the report reflects an injury to the right upper extremity when, throughout the claim, there was no doubt the accident involved her left side.



# TENNESSEE BUREAU OF WORKERS' COMPENSATION
# WORKERS' COMPENSATION APPEALS BOARD

| | | |
|---|---|---|
| Destiny Dyer | ) | Docket No. 2023-05-0917 |
| | ) | |
| v. | ) | State File No. 50156-2022 |
| | ) | |
| PetSmart, Inc., et al. | ) | |
| | ) | |
| | ) | |
| Appeal from the Court of Workers' | ) | |
| Compensation Claims | ) | |
| Thomas L. Wyatt, Judge | ) | |

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the Appeals Board's decision in the referenced case was sent to the following recipients by the following methods of service on this the 1st day of March, 2024.

| Name | Certified Mail | First Class Mail | Via Fax | Via Email | Sent to: |
|---|---|---|---|---|---|
| A. Allen Grant<br>Ben Norris | | | | X | agrant@eraclides.com<br>bnorris@eraclides.com |
| Cindy Harris | | | | X | cindy@flexerlaw.com<br>meredith@flexerlaw.com |
| Thomas L. Wyatt, Judge | | | | X | Via Electronic Mail |
| Kenneth M. Switzer, Chief Judge | | | | X | Via Electronic Mail |
| Penny Shrum, Clerk, Court of Workers' Compensation Claims | | | | X | penny.patterson-shrum@tn.gov |

*Olivia Yearwood*

Olivia Yearwood
Clerk, Workers' Compensation Appeals Board
220 French Landing Dr., Ste. 1-B
Nashville, TN 37243
Telephone: 615-253-1606
Electronic Mail: WCAppeals.Clerk@tn.gov